In re Joseph P. COMEAUX, Ella M. Comeaux, Debtors.

In re Zula G. LeBlanc, Debtor.

Nos. 03–10240, 03–10949.

United States Bankruptcy Court,
E.D. Texas,
Beaumont Division.

Dec. 29, 2003.

Daniel Jacob Goldberg, Ross, Banks, May, Cron & Cavin, P.C., Houston, TX, for Daniel J. Goldberg, Chapter 7 Trustee.

Robert E. Barron, Robert E. Barron, P.C., Nederland, TX, for Debtors, Joseph P. and Ella Comeaux and for Debtor, Zula G. LeBlanc.

### MEMORANDUM OF DECISION

BILL G. PARKER, Chief Judge.

These matters are before the Court upon similar objections by the Chapter 7 Trustee, Daniel J. Goldberg ("Trustee"), to the claim of exemptions filed by each of the debtors in their respective cases. Based upon the evidence and legal argument presented at the hearing on this matter, the Court concludes that the Trustee's objections should be sustained in part and overruled in part.[1]

### Factual and Procedural Background

*Comeaux Facts:*

On February 19, 2003, Joseph and Ella Comeaux (the "Comeauxs") filed for relief under Chapter 7 of the Bankruptcy Code.

The original schedules and statement of financial affairs of these Debtors did not list the three assets that the Debtors now claim as exempt. On May 12, 2003, the Comeauxs filed several amendments to their schedules. On Amended Schedule B, under the category for "Other contingent and unliquidated claims of every nature," the Comeauxs listed three community assets:

1. "Asbestosis Claim" with value "Unknown";
2. "Baycol Liquidation" with value "Unknown"; and
3. "Workman's Compensation Claim" with value "Unknown."

The Comeauxs' Amended SOFA makes it clear that these three claims are unrelated, and that the Debtors had previously retained separate counsel to pursue each of the three individual claims. Also on May 12, 2003, the Comeauxs amended their Schedule C to claim each of these three assets as exempt as a payment on account of personal bodily injury pursuant to 11 U.S.C. § 522(d)(11)(D) and as a payment in compensation of loss of future earnings which are reasonably necessary for the debtor's support under § 522(d)(11)(E). The "Value of the Claimed Exemption" was listed as "Unknown" in each instance. The Asbestosis Claim was also listed as exempt pursuant to the "wildcard" exemption of § 522(d)(5), again with the value of the claimed exemption listed as "Unknown."

On June 2, 2003, Daniel J. Goldberg, Chapter 7 trustee (the "Trustee"), filed a timely objection to the Comeauxs' amended claim of exemptions.[2] In his objection,

---

1. This Court has jurisdiction to consider the objections pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding

as contemplated by 28 U.S.C. § 157(b)(2)(A) and (B).

2. FED. R. BANKR.P. 4003(b) states as follows:
A party in interest may file and objection to the list of property claimed as exempt only

the Trustee asserted that the Comeauxs' valuation of the three assets as "Unknown" in their amended Schedule B was improper, as was their valuation of the claimed exemptions as "Unknown" in their amended Schedule C.[3] Without objection from the Comeauxs, the Court, on June 25, 2003, entered its "Order Granting Trustee's Objections To Debtors' Amended Schedules And To Property Claimed As Exempt," giving the Comeauxs 10 days within which to amend their schedules to properly reflect the valuation of the three claims and the value of the claimed exemptions.

Though untimely, on August 26, 2003, the Comeauxs filed their Second Amended Schedule C, which (a) valued the 11 U.S.C. § 522(d)(11)(D) personal bodily injury exemption at $17,425.00 for each of the three assets; (b) valued the 11 U.S.C. § 522(d)(11)(E) exemption for loss of future earnings at 100% for each of the three assets; and (c) valued the 11 U.S.C. § 522(d)(5) wildcard exemption at $16,350.00 for the Asbestosis Claim. However, the Comeauxs again listed the current market value of these three assets as "Unknown."

On September 4, 2003, the Trustee filed a timely objection to the Comeauxs' second amended claim of exemptions. In this objection, the Trustee asserted that the Comeauxs are entitled to only a single claim of exemption in the amount of $17,425.00 under § 522(d)(11)(D), rather than three separate exemptions of $17,425.00 as claimed by the Comeauxs. The Trustee also claimed that the Debtors' valuation of the § 522(d)(11)(E) exemption at 100% is improper when the claim has not yet been settled or otherwise concluded and the current value of each of the three claims is "Unknown."

*LeBlanc Facts:*

On June 29, 2003, Zula G. LeBlanc filed for relief under Chapter 7 of the Bankruptcy Code. Her original schedules and statement of financial affairs scheduled her "Husband's Asbestos's [sic] Claim" as a personal property asset, and her original Schedule C claimed this asbestos claim as exempt under the aforementioned three subsections of 11 U.S.C. § 522(d): § 522(d)(11)(D), § 522(d)(11)(E), and § 522(d)(5). The value of each of these exemption claims was listed as "Unknown," and the current market value of the entire asbestos claim was also listed as "Unknown." On August 20, 2003, Ms. LeBlanc filed an Amended Schedule C which: (a) valued the 11 U.S.C. § 522(d)(11)(D) personal bodily injury exemption at $17,425.00; (b) valued the 11 U.S.C. § 522(d)(11)(E) future earnings exemption

within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

**3.** The Trustee's action of objecting in a consistent and timely manner to the series of exemption claims asserted in these cases thus avoided the problem addressed in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), in which the United States Supreme Court dealt with a debtor who had claimed the potential proceeds from her pending lawsuit as exempt on her Schedule C, and had stated that the value of the proceeds was "unknown." The Supreme Court construed this as a claim to the entire amount of the potential proceeds of the pending litigation, and held that even though the debtor did not have a good faith or reasonably disputable basis for claiming the entire amount of the proceeds as exempt, the entire amount of the settlement was nonetheless valid because no party in interest had objected to the claimed exemption within Rule 4003(b)'s 30 day objection deadline. *Id.* at 643–44, 112 S.Ct at 1648–49.

at 100%; and (c) valued the 11 U.S.C. § 522(d)(5) wildcard exemption at $9,020. The current market value of the asbestos claim was again listed as "Unknown."

On September 22, 2003, the Trustee filed a timely objection to Ms. LeBlanc's amended claim of exemptions. In this objection, the Trustee raised the same argument that he had asserted in the *Comeaux* case: that the Debtor's valuation of the § 522(d)(11)(E) exemption at 100% is improper when the claim has not yet been settled or otherwise concluded and the current market value of the claim is "Unknown."

A hearing regarding the Trustee's objections in these two cases was held on November 18, 2003, and the parties were given ten days to submit supplemental briefing. Upon the receipt of such briefing from the Trustee and the respective debtors having waived a similar opportunity, the Court took the matter under advisement. This memorandum disposes of all issues pending before the Court.

### Discussion

*Personal Bodily Injury Exemption Under 11 U.S.C. § 522(d)(11)(D).*

■ The *Comeaux* case presents the issue of whether 11 U.S.C. § 522(d)(11)(D)[4] limits a debtor to one aggregate $17,425.00 exemption "on account of personal bodily injury," or whether a debtor may claim multiple exemptions up to $17,425.00 if he has, in fact, sustained personal bodily injuries arising from a number of separate and distinct episodes for which he is asserting a right to payment. There is no Fifth

Circuit precedent and sparse jurisprudence on the issue. However, the two primary cases cited by the parties reflect the two basic options available and they present opposing conclusions and rationales.

The Trustee relies upon *Christo v. Yellin (In re Christo),* 192 F.3d 36 (1st Cir. 1999). In *Christo,* the debtor suffered three separate pre-petition accidents, and sought to exempt the sum of $15,000.00[5] for each of the three personal injury claims under § 522(d)(11)(D). *Id.* at 37. In resolving the issue, the First Circuit held in a 2–1 decision that:

> the phrase 'on account of personal bodily injury' should be interpreted as defining the *nature* of the payment that is exempt and not the *number* of injuries suffered. Consequently, a Chapter 7 debtor is entitled to one exemption of no more than $15,000 on account of personal injury, regardless of the number of injuries involved.

*Id.* at 39 (emphasis in original). The majority in *Christo* provided the following explanation of its holding:

> First, the language of the exemption in 11 U.S.C. § 522(d)(11)(D) refers to "a payment." While there is some ambiguity, the more natural reading is that there is a single exemption. Second, the overall scheme of exemptions in § 522(d)(11) displays a pattern of allowing one exemption per category. Third, the purpose of exemptions is to provide support for the debtors at a reasonably

---

**4.** 11 U.S.C. § 522(d)(11)(D) states as follows:
  The following property may be exempted under subsection (b)(1) of this section:
    The debtor's right to receive, or property that is traceable to—
      a payment, not to exceed $17,425, on account of personal bodily injury, not including pain and suffering or compensa-

tion for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent.

**5.** This amount has since been increased to $17,425.00 to reflect changes in the Consumer Price Index. *See generally* 11 U.S.C. § 104.

necessary level. The reasonably necessary level should not, logically, vary to provide more in total exemption amount to someone who is in three minor accidents than one who is in a single catastrophic accident. That is particularly so given that there are the exemptions in §§ 522(d)(10)(A) and (C) for social security and disability benefits. That is, the exemption for "a payment in account of personal bodily injury" is not a proxy for degree of disability. Fourth, the reading of the exemption as limited to one $15,000 exemption more equitably treats similarly situated debtors.

*Id.* at 38.

The Comeauxs cite the decision in *In re Marcus*, 172 B.R. 502 (Bankr.D.Conn. 1994). In *Marcus,* the debtor had been involved in two pre-petition automobile accidents, and claimed a $7,500 [6] exemption for each accident. Finding that the language of § 522(d)(11)(D) was "ambiguous on the issue of whether it exempts single or multiple exemptions for bodily injury," the court resolved the issue in favor of multiple exemptions by considering both the complete exemption scheme set forth in § 522(d) and the statute's legislative history. *Id.* at 504. The *Marcus* court cited to the numerous subsections of § 522(d) that contain a specific reference to the debtor's "aggregate interest" that may be exempted. *See* § 522(d)(1), (3), (4), (5), (6) and (8). Because Congress chose to include this "restrictive language" in some subsections of § 522(d), but not (d)(11)(D), the *Marcus* court concluded that the absence of such language indicates that Congress did not intend to limit the § 522(d)(11)(D) exemption to an aggre-

gate amount of $17,425.00. *Id.* Moreover, the language of § 522(d)(2) indicates that Congress knew precisely how to limit an exemption to permit only a single exemption of the type covered. *See* 11 U.S.C. § 522(d)(2) [providing an exemption for "(t)he debtor's interest, not to exceed $2,775 in value, in *one* motor vehicle"] (emphasis added). Again, the failure of § 522(d)(11)(D) to contain a limitation to "one" payment on account of personal bodily injury indicates that § 522(d)(11)(D) was not meant to be limited in this manner. Accordingly, the *Marcus* court concluded that as long as the payments are received as compensation for actual bodily injury sustained by a debtor, such debtor should be entitled to exempt the right to receive a payment from each separate and distinct tort.

Undoubtedly the language utilized in § 522(d)(11)(D) could stand some improvement. However, in dealing with the ambiguity of the language utilized and attempting to ascertain the result intended, the analysis in *Marcus* is more compelling. As a matter of statutory interpretation, Congress clearly demonstrated that it could have specifically limited the application of § 522(d)(11)(D) to "one" payment on account of personal bodily injury.[7] The conclusion by the majority in *Christo,* that the grammatical use of the article "a," when combined with the use of the singular term "payment," indicates the exemption of only a singular payment, even in circumstances in which multiple payments from separate torts exist, is speculative at best. It seems more plausible to this Court that "a payment on ... account of personal bodily injury" would refer to any such payment as might be received, partic-

---

6. At the time of the *Marcus* decision, $7,500 was the maximum amount allowed pursuant to 11 U.S.C. § 522(d)(11)(D). This amount has since been increased to $17,425.00 per 11 U.S.C. § 104.

7. *See* 11 U.S.C. § 522(d)(2).

ularly in the light of the repeatedly demonstrated ability of the Congress in § 522 to utilize numeric limits and aggregate monetary caps in order to constrict a debtor's ability to exempt property from the scope of the bankruptcy estate. *See* 11 U.S.C. § 522(d)(1), (2), (3), (4), (5), (6), and (8).

Furthermore, the *Christo* court's substantial reliance upon the analysis in *In re Rhodes,* 147 B.R. 443 (Bankr.N.D.Ill.1992), which was construing an Illinois state exemption scheme, also seems ill-advised, particularly its reliance upon the foolish conclusion in *Rhodes* that separate exemptions for separate accidents should not be countenanced because "the number of incidents suffered by a debtor has no bearing on the debtor's need for funds." Equally questionable is the *Christo* court's justification that its ruling was necessary as a matter of financial fairness to those debtors who suffer singular, but more devastating, injuries. The *Christo* majority ignores the potentially horrendous impact which multiple accidents could impose upon the financial circumstances of a singular debtor, adopts its BAP's unsupported conclusion that Congress "likely did not anticipate … multiple incidents of bodily injury"[8] and puzzlingly deduces that a singular exemption would be sufficient in all circumstances to adequately fulfill any debtor's financial needs. It seems determined to prevent what it must presume to be the fraudulent intent of scores of hypothetical debtors who are apparently searching for multiple opportunities to sustain a personal bodily injury with the nefarious design of thereafter shielding a

portion of any resulting award from their creditors (assuming one is even realized) under § 522(d)(11)(D). Such reasoning, as recognized by the dissent in *Christo,* "rests upon a shaky policy foundation and ignores language in the statute that would allow separate exemptions for separate bodily injury claims." *Christo,* 192 F.3d at 40.

In light of the statutory ambiguity, the general recognition that exemptions should be construed liberally in a debtor's favor, and the likelihood that the unfortunate victim of multiple incidents resulting in separate inflictions of personal bodily injury will need the small degree of financial protection which § 522(d)(11)(D) affords, the Court concludes that a debtor, who owns multiple rights to receive a payment on account of personal bodily injury arising from separate and distinct incidents, is entitled to claim a § 522(d)(11)(D) exemption for each such payment right. Accordingly, the Trustee's objection to the Comeauxs' multiple claims of exemption under § 522(d)(11)(D) is overruled.

*Evaluation of Personal Bodily Injury Exemptions Under 11 U.S.C. § 522(d)(11)(E).*

In both the *Comeaux* and *LeBlanc* cases, the Trustee has objected to the respective debtors' exemption claim of "100%" of the various assets as rights to a payment in compensation of loss of future earnings pursuant to 11 U.S.C. § 522(d)(11)(E).[9] The Trustee asserts in both cases that, because the bankruptcy estate is not yet entitled to any recovery

---

**8.** *In re Christo,* 228 B.R. 48, 51 (1st Cir. BAP 1999).

**9.** 11 U.S.C. § 522(d)(11)(E) states as follows: The following property may be exempted under subsection (b)(1) of this section: The debtor's right to receive, or property that is traceable to—

a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of debtor.

from the pending litigation claims,[10] the attempt by the respective debtors to exempt from the estate 100% of the potential proceeds arising from such litigation claims is improper because there is no way to determine at the present time whether and to what extent the recovery ultimately realized by the bankruptcy estate will qualify for exemption under the language of 11 U.S.C. § 522(d)(11)(E).

The assessment of impropriety may be technically inaccurate. However, there is no dispute that the litigation claims, which were initially asserted by these Debtors in the prepetition period and which are now under the control of the Trustee, are still contingent at this stage and that the value of each of the pending claims is truly unknown. Nor is there any dispute that the Trustee objected merely to preserve the rights of these two bankruptcy estates even though the Trustee admittedly possesses insufficient information at the present time to evaluate, much less present evidence contesting, the legitimacy of the respective Debtors' exemption claims. It is also certain that the contingent nature of those claims at the present time would preclude these Debtors from making any type of *prima facie* showing that the referenced property qualifies for the particular exemption claimed. It goes without saying that the current contingent nature of these claims precludes the existence of any factual basis upon which this Court could make a proper determination of the legitimacy of these claims. Any decision could only be adverse to the party possessing the initial burden of making any type of evidentiary showing. It thus presents a question of fundamental fairness as to

whether either side should be encumbered at this point with an evidentiary burden which could not possibly be sustained because the factual scenario has not been sufficiently developed for credible evidence to be presented. An answer in the negative should be obvious.

### Conclusion

Accordingly, the Court will grant a continuance of the hearing to consider the Trustee's objections to the claims of exemption in *LeBlanc* to a future date not less than thirty (30) days after the earlier of: (1) the filing of any motion by the Trustee to approve a compromise or settlement of the cause of action from which Ms. LeBlanc's exemption claim arises; or (2) the entry of a final judgment in any such cause of action. To assist the Court in establishing a new hearing date, the Trustee shall file a request for final hearing upon the occurrence of the triggering event.

As to the *Comeaux* case, the Court will treat its ruling regarding the number of exemption claims which can be asserted under § 522(d)(11)(D) as an interim order and grant a continuance of the hearing to consider all remaining issues pertaining to the Trustee's objections to the claims of exemption to a future date not less than thirty (30) days after the earlier of: (1) the filing of any motion by the Trustee to approve a compromise or settlement of the *final* cause of action from which any of the Comeauxs' exemption claims arise; or (2) the entry of a final judgment in that final cause of action. Similarly, once the final triggering event occurs, the Trustee shall file a request for hearing on its pending

10. As mentioned previously, the Comeauxs listed three assets as exempt pursuant to § 522(d)(11)(E) on their Second Amended Schedule C: an Asbestosis Claim, the Baycol Liquidation, and a Workman's Compensation Claim; while Ms. LeBlanc listed one asset as exempt on her Amended Schedule C: "Husband's Asbestos's [sic] Claim." There is no dispute that Ms. LeBlanc is a dependent of her husband and therefore eligible to claim the exemption.

objections and the Court will establish a definite date and time for such hearing.

These procedures will allow the parties to review the terms of any eventual recovery arising from these various causes of action and permit amended pleadings to be filed at a time when all the relevant facts have become known.[11]

This memorandum of decision constitutes the Court's findings of fact and conclusions of law [12] pursuant to Fed.R.Civ.P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr.P. 7052 and 9014. Appropriate orders shall be entered which are consistent with this opinion.

---

11. As for the parties' mutual request for guidance regarding the proper process in future cases when the circumstances of pending litigation prevent the parties from making a proper determination or evidentiary presentation regarding the legitimacy of any exemption claim, it would seem that a similar deferral would be appropriate. In lieu of an actual objection, the Trustee (or any other interested party in interest) should file a request for the extension of the 30–day period within which to object to a debtor's claim of exemptions for a period of thirty (30) days after the earlier of: (1) the filing of any motion by the trustee to approve a compromise or settlement of the cause of action from which the debtor's exemption claim arises; or (2) the entry of any final judgment in such cause of action. The trustee or other party seeking such an extension should be aware that the Fifth Circuit has determined that, not only does the request for extension have to be presented within the 30–day objection period established by FED. R. BANKR P. 4003(b), but that the actual order extending the time must be entered prior to the expiration of the 30 day period, *Matter of Stoulig*, 45 F.3d 957 (5th Cir.1995). Accordingly the requesting party should take appropriate action to insure the Court's awareness of the applicable deadline.

12. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.